**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| WARIS RAHIMI and MIRWAIS HAKIM ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.  8:18-cv-02036-CBD |
| ) | |
| MID ATLANTIC PROFESSIONALS, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT

Plaintiffs, Waris Rahimi ("Plaintiff Rahimi") and Mirwais Hakim ("Plaintiff Hakim") (collectively "Plaintiffs") by and through their undersigned counsel, together with Defendant, Mid Atlantic Professionals, Inc. ("Defendant"), through its undersigned counsel, respectfully move this Court for an Order approving the settlement (the "Settlement Agreement") between Plaintiffs and Defendant, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  A true and correct copy of the Settlement Agreement and General Release is attached hereto as **Exhibit "A."**

In support of this motion, the Parties[1] state:

### SUMMARY OF LITIGATION AND BACKGROUND

Plaintiffs, by way of their collective action complaint, have advanced their claims and those of other similarly situated individuals for Defendant's purported failure to pay overtime wages in violation of FLSA, 29 U.S.C. §§ 206, 207, 216.

---

[1] Plaintiffs Waris Rahimi and Mirwais Hakim and Defendant Mid Atlantic Professionals, Inc. are collectively referred to herein as the "Parties."

Defendant contracts with the United States government, placing professionals in various roles throughout the country to assist the United States Army for training purposes. Namely, Defendant provides the Department of Defense, Department of State, Special Operations, and Intelligence Community with cultural advisors, training delivery officers, interpreters, counterintelligence specialists, and emergency medical technicians, among other personnel.

Relevant to this lawsuit, Defendant hired "Role Players" who provide role-playing and exercise support to prepare military personnel for real-world contingency operations. Defendant hires Role Players on an as-needed basis and places them on missions at military training centers in locations such as Fort Bliss, Texas, and Yakima, Washington. These missions are short-term, lasting from a few days to, at most, a few weeks.

Defendant's standard practice is to notify employees who are hired for these positions in writing that their employment with Defendant will terminate upon completion of a project.

Defendant separately employed Plaintiffs as Role Players and sent them on a few missions intermittently between 2011 and 2017.

**Plaintiff Rahimi's Employment**

During the relevant statute of limitations period (i.e. since 2015), Plaintiff Rahimi worked three short missions for MAPI:

- In October of 2015, Plaintiff Rahimi worked a mission lasting approximately <u>one week</u> in Yakima, WA;

- In April of 2016, Plaintiff Rahimi worked a mission lasting approximately <u>10 days</u> in Fort Bliss, TX; and

- In September of 2016, Plaintiff Rahimi worked a mission lasting approximately <u>12 days</u>, also in Fort Bliss, TX.

4812-0073-5601.v1

Therefore, in total, Plaintiff Rahimi's FLSA claim is related to less than 30 scheduled days of work on missions for MAPI.

**Plaintiff Hakim's Employment**

During the relevant statute of limitations period (i.e. since 2015), Plaintiff Hakim worked six missions:

- In November of 2015, Plaintiff Hakim worked a mission lasting approximately <u>one week</u> in Yakima, WA;

- In April of 2016, Plaintiff Hakim worked a mission lasting approximately <u>10 days</u> in Fort Bliss, TX;

- Between August and September of 2016, Plaintiff Hakim worked a mission lasting approximately <u>12 days</u> in Fort Bliss, TX;

- In February of 2017, Plaintiff Hakim worked a mission lasting approximately t<u>wo weeks </u>in Fort Bliss, TX;

- In March of 2017, Plaintiff Hakim worked a mission lasting approximately <u>one week</u> in Fort Bliss, TX;

- In June of 2017, Plaintiff Hakim worked a mission lasting approximately <u>three weeks</u> in Fort Bliss, TX.

Therefore, in total, Plaintiff Hakim's FLSA claim is related to only approximately 70 scheduled days of work on missions for MAPI.

On February 6, 2018, Plaintiffs filed their Complaint, Case No. 18CV0278 CAB KSC, in the United States District Court for the Southern District of California asserting a violation of the FLSA, 29 U.S.C. § 201 *et seq.*, based on an allegation that Defendant allegedly failed to provide full compensation including overtime compensation.  Plaintiffs alleged that they were paid on a

4812-0073-5601.v1

day-rate basis and that during each mission, they would work more than 40 hours in the workweek but were not paid overtime. They also allege that the travel time to get to each mission, or work site, was compensable time for which they were not paid. Additionally, Plaintiffs claimed that Defendant did not keep accurate time records.

On March 16, 2018, Defendant answered the Complaint, denying the Plaintiffs' allegations. Defendant asserted that Plaintiffs' time was properly recorded and that Plaintiffs were properly paid for all hours worked, including any overtime hours.

On May 22, 2018, Defendant moved to transfer venue pursuant to 28 U.S.C. § 1404, based on agreements signed by Plaintiffs that included enforceable forum selection clauses designating a federal or state court in Maryland as the exclusive forum.

On June 29, 2018, the Honorable Cathy Ann Bencivengo granted Defendant's Motion to Transfer Venue to the United States District Court for the District of Maryland, Southern Division for further proceedings, pursuant to 28 U.S.C. § 1404.

On July 3, 2018, the United States District Court for the District of Maryland Southern Division received this action and assigned it Case No. 8:18-CV-02036.

## THE SETTLEMENT

Shortly after this action was transferred, the Parties undertook negotiations designed to settle this case.

Although Defendant denied and continues to deny any wrongdoing or liability in this matter, a settlement was reached due to the Parties' respective desires to resolve their differences and this case without engaging in discovery or active litigation, which the Parties anticipate would result in significant costs over an extended period of time given the collective action nature of the claim.

4812-0073-5601.v1

Accordingly, the Parties have entered into the Settlement Agreement, which contains all terms and conditions agreed to by the Parties.  The monetary terms of the settlement are as follows:

    a.  Checks totaling **$5,964.00** are to be paid to the individual Plaintiffs representing alleged lost wages, interest and damages in the amounts specified below.

| | |
|---|---|
| Plaintiff Hakim | $2,982.00 |
| Plaintiff Rahimi | $2,982.00 |

    b.  A check totaling **$2,936.00** is to be paid to the Plaintiffs' Counsel to account for attorneys' fees and costs.

Plaintiffs have reviewed the terms of the settlement with their Counsel and are satisfied that this represents a fair and reasonable settlement of their claims.

In light of the settlement agreement reached by the Parties, Plaintiffs will not be pursuing a collective or class action against the Defendant.  Based on the information and documents exchanged between the Parties, the Parties believe that the offer of settlement is fair and reasonable and is an equitable compromise of disputed facts and claims.

Under the Settlement Agreement, Plaintiffs agreed to dismiss all Plaintiffs' claims in this Action with prejudice, and without prejudice as to the putative collective action members upon the Court's entering an Order Granting Approval of this proposed FLSA settlement.  (Kuchinsky Decl. ¶¶ 2-4, Ex. A)

## **LEGAL ANALYSIS**

An FLSA claim can be waived or settled only when the settlement is supervised by a court or the Department of Labor.  29 U.S.C. 216 (c); *Lynn's Food Stores, Inc. v. United States ("Lynn's Food Stores")*, 679 F.2d 1354 (11th Circ. 1982).

The Fourth Circuit follows the guidelines for approval of an FLSA settlement set forth by the Eleventh Circuit in *Lynn's Food Stores*.  *See*, *e.g., Lomascolo v. Parsons Brinckerhoff, Inc. et al.*, 2009 WL 3094955, at *8 (E.D. Va. Sept. 28, 2009); *Boone v. City of Suffolk, Va.*, 79 F. Supp. 2d 603, 605 (E.D. Va. 1999).

When reviewing a proposed settlement of an FLSA claim, the Court must "scrutinize the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc.*, 679 F.2d at 1353.  Four factors should be examined to determine whether a proposed settlement is fair and reasonable: (i) Was the settlement achieved in an adversarial context?; (ii) Was the plaintiff represented by attorneys who can protect his rights?; (iii) Does the settlement reflect a reasonable compromise over issues that are actually in dispute?; and (iv) Is the Settlement fair?  *See, id.* at 1354.

An FLSA settlement should be approved "[i]f the proposed settlement reflects a reasonable compromise over contested issues.'"  *Id.* at 1350.

In this instance, the Parties seek this Court's approval of the Settlement Agreement. With regard to these factors, it is significant to note the following:

1.  The Parties were in dispute and the matter was settled as a result of the adversarial proceeding (this lawsuit) and negotiations that transpired between the Parties;

2.  Throughout this litigation, the Parties were represented by counsel who adequately protected their rights;

4812-0073-5601.v1

3.  The Parties settled this matter after the early stages of the pleading phase and Defendant's successful Motion to Transfer Venue.  The Settlement represents reasonable compromises regarding bona fide disputes between the parties regarding the questions of liability and the amount of alleged damages under the FLSA;

4.  The Settlement Agreement was negotiated at arm's length, and the Parties believe that its terms, which include payment by Defendant to Plaintiffs for lost wages, interest and damages are a fair and appropriate resolution of their good faith dispute, and the Parties are fully satisfied with the terms of the Settlement Agreement.

More specifically, there are risks of litigating this case further as there are disputes of fact with respect to any potential liability.  With respect to Plaintiffs' claim that they worked missions but were not paid overtime wages for time worked over 40 hours in the workweek, Plaintiffs lack contemporaneous time records to verify whether they in fact worked over 40 hours in the workweek and if so, how frequently and when.  To litigate the case, Plaintiffs will therefore have to present their own testimony and try to find corroborating third parties to confirm they in fact worked over 40 hours per week, and that it in fact was 40 hours according to the workweek set by Defendant (for example even if they worked 40 hours in 7 consecutive days, this could have been spread over two separate workweeks so that no overtime was due). There is thus merit to settling this aspect of the claim because, if there is a he-said, she-said fact dispute as to start and end times of work, and if Plaintiffs cannot establish they actually worked more than 40 hours in one workweek, as defined by Defendant, then they are entitled to $0 in connection with their claim for overtime wages.

4812-0073-5601.v1

Similarly, Plaintiffs' claim related to compensation for travel time would be litigated and there is no clear liability. It is Defendant's position that Plaintiffs had no home base or regular work site. Rather, Plaintiffs were hired only for specific missions. Their employment ended after the termination of a mission. Therefore, Plaintiffs would be hired, for example, for a mission and then terminated one week later when the mission concluded. Defendant hired workers from across the United States. Defendant would let applicants know the location of a mission and it was clear that it was the applicant responsibility to appear at the mission site, at the start of the mission, ready to report to work. Each worker including the Plaintiffs could choose their mode, method and timing of travel to get to a particular mission site. Moreover, Plaintiffs could decide not to apply for a certain mission if they did not wish to travel that far. It is therefore Defendant's position that no travel time was compensable. Though Plaintiffs dispute this as a matter of law, there is a sufficient dispute that it is unclear which party would prevail on this issue. There is thus merit to settling this aspect of the claim because, if Plaintiffs are wrong on the law, then they are entitled to $0 in connection with travel time.

In addition, the attorneys' fees sought are fair and reasonable. The Settlement Agreement includes the payment of $1,882 in fees and $1,054 in costs. (Kuchinsky Decl. ¶¶ 2-3, Ex. A)

In awarding attorneys' fees under the FLSA, the Court determines the lodestar; "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-321 (4th Cir. 2008). Whether the number of hours expended and the rates for those hours is reasonable is determined through consideration of the twelve Johnson factors,

derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). These factors to be considered are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 226 n. 28.

    1.   **The Time and Labor Required.**  Here, the time and labor required is detailed in the records attached to counsel's Declaration, Exhibit B, which demonstrate the time and tasks contemporaneously provided in categories as provided in Appendix B of the Local Rules. The records identify the person performing the work, the work that was done, the date the work was performed, and the amount of time provided for each task. The work performed was reasonable and necessary and, where possible, was delegated to legal assistants and not charged to keep costs down. (Kuchinsky Decl. ¶¶ 3-7, Ex. B)

The amount of $1,882 in attorney's fees represents only 19% of Plaintiffs' Counsel's actual lodestar. *Id.* Specifically, Plaintiffs' Counsel have incurred 33.23 billable hours that attorneys and legal assistants have spent working on this matter and reaching a final resolution of Plaintiffs' claims, reflecting a total lodestar of $9,865. Filed with this motion is the sworn declarations of Plaintiffs' Counsel, attesting to (1) the experience and qualifications of the attorneys and paralegals who worked on this case, (2) those attorneys' and paralegals' customary

4812-0073-5601.v1

billing rates during this case, and (3) the hours reasonably expended by those attorneys and paralegals in prosecuting this case. (Kuchinsky Decl. ¶¶ 6-7)

As set forth in the declaration of Alexei Kuchinsky, during the course of this litigation, Plaintiffs' Counsel have extensively investigated the facts underlying the claims, researched applicable law, developed case strategies and litigation theories, drafted pleadings, opposed argued motion, and negotiated a proposed settlement. Specifically, Plaintiffs' Counsel performed the following tasks:

- Conducting pre-filing fact investigation, legal research, and analysis;
- Having numerous in-person and telephonic conversations with Plaintiffs regarding case status and strategy;
- opposed Defendant's Motion to Transfer (S.D. Cal. Doc. No. 12, June 29, 2018)
- Reviewing and analyzing Plaintiffs' payroll records,
- Negotiating and drafting the proposed settlement; and
- Preparing and drafting motions for approval of the FLSA settlement and related memoranda.

(Kuchinsky Decl. ¶5.)

Plaintiff also incurred out-of-pocket costs in the amount of at least $1,054. This cost and expenses were advanced by Plaintiffs' Counsel office and are not part of overhead. Defendants have agreed to pay costs as part of the settlement. (Kuchinsky Decl. ¶8.)

1. **The Novelty and Difficulty of the Issue.** While the elements and standards of an FLSA claim are well established, each case is fact intensive and the analysis requires investigation and extensive review of documents. Additionally, this case included a contractual requirement to venue any proceedings in Maryland. As such, the motion practice was elevated to beyond that of basic pleadings. (Kuchinsky Decl. ¶11).

4812-0073-5601.v1

2. **The Level of Skill Required to Perform the Legal Services Properly.** FLSA cases require knowledge of employment law and maintaining a current knowledge of legal developments in the field. While this matter resulted in a settlement, Plaintiffs' counsel prepared the initial pleadings with great specificity and performed extensive investigation and analysis of available information before filing suit. Additionally, Plaintiffs' counsel spent considerable time in preparing its Opposition to Defendant's Motion to Transfer Venue. (Kuchinsky Decl. ¶9-10.)

3. **The Preclusion of Employment by the Attorney.** Taking on this case did not preclude counsel from other work, however, for the reasons set forth above the matter was time consuming. (Kuchinsky Decl. ¶12.)

4. **The Customary Fee.** Appendix B to the Court's Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases, states that attorneys admitted to the bar for less than five years may reasonably bill $150-225, those admitted to the bar for five to eight years may reasonably bill $165-300, those admitted nine to fourteen years may reasonably bill $225-350 per hour, those admitted to the bar for fifteen to twenty years may reasonably bill $275-420 per hour, and those admitted for over twenty years may reasonably bill $300-475 per hour. *See* Local Rules App'x B, at 3.c.

Plaintiffs' Counsel's lodestar is based on the following hourly rates: $400 for 27-year attorney/partner William Klein, $300 for 7-year attorney/partner Alexei Kuchinsky, and $125 for all paralegals. As detailed in Plaintiffs' Counsel's supporting Declaration, attorneys have extensive wage-and-hour class, collective, and representative action experience. (Kuchinsky Decl. ¶6.)

4812-0073-5601.v1

5.  **Whether the Fee is Fixed or Contingent.** Here, Plaintiffs' Counsel took this matter on a purely contingent basis and invested almost a year in litigating this matter without any compensation or guarantee of payment for their services. (Kuchinsky Decl. ¶13.) Not only have Plaintiffs' Counsel rendered their services without any compensation to date, they have also advanced all out-of-pocket litigation costs, which amount to $1,054. *Id.*

6.  **The Time Limitations Imposed by the Client or the Circumstances.** Plaintiffs in any wage litigation must move as quickly as possible to develop a file and bring their action in order to avoid the running of statutes of limitations. (Kuchinsky Decl. ¶14.)

7.  **The Amount Involved and the Results Obtained.** Though the process of informal discussion and negotiation, the Parties reviewed the employment records and determined that the most Plaintiff Hakim arguably could be owed, if successful on his claim, was $4,632 and Plaintiff Rahimi was arguably owed $2,317. The agreed settlement for both Plaintiffs exceeds the amount of their wages owed. (Kuchinsky Decl. ¶15.)

8.  **The Experience, Reputation and Ability of the Attorneys.** Plaintiffs' Counsel are seasoned attorneys with considerable experience in wage-and-hour representative and class actions, as set out in their declarations. (Kuchinsky Decl. ¶¶ 9-10.)

9.  **The Undesirability of the Case.** The nature of this case and the fact that wage cases can be met with strong opposition from a well-financed defendant makes these cases undesirable to many attorneys.

- 12 -

10.    **The Nature and Length of the Professional Relationship With the Client.**    Prior to filing this Action. Plaintiffs' Counsel did not have any professional relationship with both Plaintiffs. (Kuchinsky Decl.  ¶17.)

11.    **Awards in Similar Cases.**  In *Navarro v. Eternal Trendz Customs, LLC, et al.*, 2015 WL 898196 (D. Md. Mar. 2, 2015), the Court approved a settlement which included attorneys' fees and costs in the amount of $3,545.20, where Plaintiffs Gonzalez and Navarro received $4,291.49 and $1,298.89 respectively. In *Duprey v. Scotts Co. LLC*, 2014 WL 2174751 (D. MD. May 23, 2014), the Court approved a settlement which included $3,500 in attorneys' fees and costs, where Plaintiff Duprey received $4,500 in wages and liquidated damages.

<u>**REVIEW OF DEFENSE COUNSEL**</u>

Counsel for Defendant has reviewed this Joint Motion for Approval of Settlement and has authorized Plaintiffs' Counsel to represent to the Court that Defendant also seeks to settle this case for the reasons stated above.

//

//

//

//

//

//

//

4812-0073-5601.v1

## CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court grant this

Motion, approve this proposed FLSA settlement, and issue an Order in the form of the

Proposed Order Approving Settlement, submitted contemporaneously herewith.


Respectfully submitted this 31st day of August, 2018,

Attorneys for Plaintiffs
**WARIS RAHIMI and MIRWAIS HAKIM**


/s/ *William P. Klein (pro hac admitted)*
Alexei Kuchinsky (California Bar No. 279405)
William P. Klein (California Bar No. 148867)
KLEIN LAW GROUP LLP
Four Embarcadero Center, Suite 3950
San Francisco, CA 9411
(415)693-9107
alexei@sfbizlaw.com

Jointly submitted this 31st day of August, 2018,

Attorneys for Defendant
**MID ATLANTIC PROFESSIONAL, INC.**


/s/ *Stacie D. Yee (pro hac admitted)*
Stacie D. Yee (California Bar No. 223544)
Richard Oliver (California Bar No. 116446)
(admitted pro hac)
PILLSBURY WINTHROP SHAW PITTMAN,
LLP
725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017
Stacie.yee@pillsburylaw.com

4812-0073-5601.v1